JERONTAE PARKS,

Plaintiff,

v.                                                    Case No. 25-cv-1471-pp

CO ISAIAH D. MONSIVAIS, *et al.*,

Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Plaintiff Jerontae V. Parks, who is representing himself, was incarcerated at Oshkosh Correctional Institution when he filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On September 26, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $4.81. Dkt. No. 5. The court received that fee on October 24, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time as he is able.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff was incarcerated at Oshkosh Correctional Institution during the events described in the complaint. Dkt. No. 1 at 3. He alleges that on May 26, 2025, he was diagnosed with kidney stones. Id. He says that he had a procedure to have a stent put in place while awaiting another surgery to remove the kidney stones. Id. at 3-4. The plaintiff alleges that on June 1, 2025, at about 9:30 p.m., he approached the officer station in the day room after experiencing symptoms of dizziness, urination of blood clots at a rapid rate and abrupt abdominal pain that was a ten on a scale of one to ten. Id. at 4. He says that after having been discharged from the hospital on May 27, he was told to

3

contact a healthcare provider if he experienced any worsening of the above-listed symptoms. Id.

The plaintiff alleges that in an attempt to contact a healthcare provider, he approached defendant Isaiah Monsivais at the officer station and explained the symptoms he was having while showing him the blood soaking through his shorts. Id. at 4-5. Monsivais allegedly told the plaintiff to put in a blue slip and said that "HSU is not coming at this time of night." Id. at 5. The plaintiff says that he responded that he had just had a procedure done and that something was wrong. Id. Monsivais allegedly said, "Count time is coming up, lock in before you get sent to the RHU (Restrictive Housing Unit) for refusing to go back to your cell." Id.

The plaintiff states that instead of returning to his cell, he approached defendant Sergeant Henry, who was in the sergeant section at the officer station. Id. He allegedly told Henry that he was having a medical emergency and explained his symptoms while showing her the blood soaking through his shorts at a rapid rate. Id. The plaintiff states that Monsivais and Henry then called the HSU (health services unit) four times over the next thirty minutes. Id. They allegedly communicated with defendants Nurse Lindsay Sorenson and Dr. Godiwalla, who denied the plaintiff medical attention. Id. at 5-6.

After Sorensen and Godiwalla denied the plaintiff medical attention, Henry allegedly told him plaintiff to "lock in" and to "[t]ough it up" or she would have to send him to the RHU. Id. The plaintiff allegedly responded that he was dizzy and barely able to walk and that he needed help. Id. Henry allegedly

4

ignored the plaintiff for about ten minutes, then called defendant Captain Toombs to escort the plaintiff to the RHU. Id.

Toombs allegedly arrived with five or six other correctional officers. Id. The plaintiff states that they approached him while he was on the floor in apparent agony and said that he had two options: either to let the officers help him get in the wheelchair and wheel him back to his room or the officers would put him in the wheelchair and wheel him to the RHU. Id. at 6-7. The plaintiff states that he chose the latter option. Id. at 7. He said that he didn't want to make the situation any worse than it was. Id. The plaintiff allegedly took a shower to rinse off the blood and overtook his pain medication so that he would be able to tolerate the pain and sleep. Id.

The plaintiff states that he submitted an inmate complaint requesting an investigation into the denial of medical care. Id. at 7-8. The plaintiff's complaint allegedly was affirmed. Id. at 8. The corrections complaint examiner found that because the plaintiff had expressed new and worsening symptoms a short time after his procedure, a hands-on nursing assessment and direct conversation with the plaintiff was warranted. Id.

The plaintiff alleges that after the June 1, 2025 incident, he continuously complained to HSU staff that he had increased pain in his abdomen area, that he was urinating blood at a high rate and that it was very painful for him to walk. Id. at 9 He states that he was not sent to the emergency room until June 22, 2025, after a nursing sick call when a "UA dip" came back abnormal. Id. The plaintiff states that it wasn't until a follow up with his medical provider

shortly after a second trip to the ER that he was given the proper pain medication to deal with the pain and pads to deal with the bleeding and leakage. Id. at 9-10. The plaintiff states that he also was given antibiotics for any infection and that the ER doctor requested that his surgery appointment be moved up. Id. at 10. The plaintiff states that he finally was able to have successful surgery after weeks of inadequate medical care and being denied medical care. Id.

The plaintiff claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Id. at 11. He seeks declaratory relief, injunctive relief and compensatory and punitive damages. Id. at 13.

C.      Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013,

1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. McGowan, 612 F.3d at 640 (citing Estelle, 429 U.S. at 104-05.

The plaintiff alleges that a couple days after a medical procedure, he experienced symptoms of dizziness, urination of blood clots at a rapid rate and severe abdominal pain, and that the defendants refused to get him medical attention or call for a medical emergency. He may proceed on Eighth Amendment claims against the defendants in their individual capacities based on these allegations.

## III.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants CO Isaiah D. Monsivais, Sgt. Henry, Capt. Toombs, Lindsay Sorenson and Dr. Godiwalla. Under the informal service agreement, the court

7

**ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing with the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if his address changes. It is important that the court know where to send orders and filings to the plaintiff. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

8

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 25th day of June, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

9